UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAVIA CAPITAL PARTNERS, INC.,<br><br>                  Plaintiff,<br><br>      v.<br><br>HONG KONG BOHAI LEASING ASSET MGMT. CORP., LTD., BOHAI LEASING CO., LTD. F/K/A BOHAI CAPITAL HOLDINGS CO., LTD., AND SEACO SRL,<br><br>                  Defendants. | Case No. 1:20-cv-02543 (JMF) |

## **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

 

Kimberly A. Havlin
Iris B. Greenquist
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
kim.havlin@whitecase.com

*Counsel for Defendants Hong Kong Bohai Leasing Asset Mgmt. Corp., Ltd., Bohai Leasing Co., Ltd., and Seaco SRL*

AMERICAS 103069962

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

LEGAL STANDARD.................................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

    I.    There Has Been No "Seaco Sale"..................................................................................... 2

        A.    There Has Been No "Transaction Or Series Of Transactions" ......................... 2

        B.    Plaintiff's New "Details" Must Be Disregarded ............................................... 3

        C.    Plaintiff's Payment Is Supposed To Be Made From Sales Proceeds, And There Are No Sales Proceeds ..................................................................................... 4

        D.    The Actions Of The Hainan Provincial Government At HNA Group Are Not A "Seaco Sale" ................................................................................................... 5

        E.    The Alleged Drop In Seaco's Net Income Is Also Not A "Seaco Sale"........................... 7

    II.    Plaintiff Fails To State A Claim For Breach Of The Seaco Guarantee ............................... 9

    III.    Plaintiff Is Not Entitled To Injunctive Relief To Receive Bi-Weekly Update Reports....... 9

        A.    Plaintiff Does Not Have Standing To Sue On This Obligation ........................ 9

        B.    Plaintiff Has Not Adequately Pled The Elements Of Injunctive Relief........................... 9

CONCLUSION.............................................................................................................................. 10

AMERICAS 103069962

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*260-261 Madison Ave., LLC v Bower Monte & Greene, P.C.*, 137 A.D.3d 457 (1st Dep't 2016)...................................................................................................................9

*Amron v. Yardain Inc. Pension Plan*, 2019 U.S. Dist. LEXIS 210096 (S.D.N.Y. Dec. 5, 2019)..........................................................................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................8

*Atl. Speciality Ins. Co. v. AE Outfitters Retail Co.*, 2014 U.S. Dist. LEXIS 66448 (S.D.N.Y. May 12, 2014)............................................................................................2

*Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144 (S.D.N.Y. 2007) ...........................................5

*Del Glob. Techs. Corp. v. Park*, 2008 U.S. Dist. LEXIS 101757 (S.D.N.Y. Dec. 15, 2008) ...................................................................................................................7

*Ellington v EMI Music, Inc.*, 24 N.Y.3d 239 (N.Y. 2014)................................................................4

*Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263 (E.D.N.Y. 2010)..........................................7

*Gillespie v. St. Regis Residence Club, N.Y. Inc.*, 343 F. Supp. 3d 332 (S.D.N.Y. 2018) ...................................................................................................................6

*In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731 (S.D.N.Y. 2017) ...........................................6

*Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010) ..............................2

*Marathon Private Equity Fund I, LLC v. Questor Mgmt. Co., LLC*, 2008 N.Y. Misc. LEXIS 4457 (N.Y. Sup. Ct. July 22, 2008) ......................................................4

*ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.)*, 287 B.R. 605 (Bankr. S.D.N.Y. 2003) .................................................................3, 7

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 133 A.D.3d 96 (1st Dep't 2015) ........................................................................3

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 2006 U.S. Dist. LEXIS 91959 (S.D.N.Y. Dec. 18, 2006)...........................................................................................4

*Stallworth v. Joshi*, 2017 U.S. Dist. LEXIS 219931 (S.D.N.Y. Nov. 22, 2017) ............................10

*Starr Int'l Co. v. FRB*, 906 F. Supp. 2d 202 (S.D.N.Y. 2012).........................................................6

*UBS Sec. LLC v. Red Zone LLC*, 77 A.D.3d 575 (1st Dep't 2010) ................................................7

AMERICAS 103069962

*Universal Trading & Inv. Co., Inc. v. Tymoshenko*, 2012 U.S. Dist. LEXIS 176214 (S.D.N.Y. Dec. 12, 2012)..................................................................................4

AMERICAS 103069962

Defendants hereby submit this reply memorandum of law in support of their motion to dismiss (the "Motion" or "Mot.") Plaintiff's Complaint.[1]

## PRELIMINARY STATEMENT

Defendants have shown that a "Seaco Sale" as defined in the PI Agreement is exactly what it sounds like: a transaction in which Seaco or some part of it is sold. Plaintiff admits that there has been no sale or any similar transaction and that the Complaint alleges no buyer, no SPA or other agreement, no escrow agent, no bidding, no closing, and no consideration paid. A payment to Bravia without any Seaco transaction is directly contrary to the text and intent of the PI Agreement, and would render meaningless the payment framework laid out in it.

Because no part of Seaco has actually been sold, Plaintiff focuses its Opposition (the "Opposition" or "Opp.") on embellishing its allegations about (1) COVID-related rescue efforts by the Hainan provincial government at HNA Group and (2) a drop in Seaco's net income. As to the first, the Complaint's scant allegations about a Joint Working Group and the appointment of two new officers at HNA still fail to show a "change of control" at *Seaco*, a company separated from HNA Group by five distinct legal entities, one publicly traded, of which HNA owns 51 percent. And Plaintiff's effort to save its "drop in net income" argument by (newly) claiming that the drop "must" have been the result of an asset disposal does not add anything.

Perhaps recognizing its deficiencies, Plaintiff attempts to introduce various new facts in its Opposition. New assertions in an Opposition cannot backstop a deficient pleading—especially where Plaintiff was given the opportunity to amend its Complaint and chose not to do so. Finally, Plaintiff's claim for injunctive relief is deficient as well, for all the reasons stated in the Motion, which Plaintiff barely addresses. The Complaint should be dismissed in its entirety with prejudice.

---

[1] Capitalized terms used and not defined herein have the meaning ascribed to them in the Motion.

**LEGAL STANDARD**

Plaintiff agrees that in interpreting the PI Agreement on this motion to dismiss, the document and not Plaintiff's description of it controls,[2] and that the Motion may be granted if the contract is unambiguous and Defendants' interpretation is correct.  (Mot. at 8; *see also* Opp. at 4)  Plaintiff repeatedly states that any ambiguity must be construed in Plaintiff's favor (Opp. at 7-8), though neither party argues that the contract is ambiguous.  (Mot. at 1; *see also* Opp. at 4).  A contract "does not become ambiguous merely because the parties urge different interpretations in the litigation."  *Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010).

**ARGUMENT**

I. **THERE HAS BEEN NO "SEACO SALE"**

   A. **There Has Been No "Transaction Or Series Of Transactions"**

In the PI Agreement, the Parties chose the phrase "Seaco Sale" to describe what would trigger a payment to Plaintiff.  They defined a "Seaco Sale" as "any transaction or series of transactions involving a disposal or transfer, or a change in control in . . . a direct or indirect ownership interest in Seaco."  (PI Agreement § 1.1 ("Seaco Sale"))  Plaintiff claims a "Seaco Sale" has happened based solely on an alleged change of control—in Plaintiff's view, the definition's reference to a "transaction" "does not modify or alter the remainder of the parties' words," and the fact that the words used are "Seaco *Sale*" really should have no relevance at all.  (Opp. at 1, 5, 6, 7)  Plaintiff fails to follow the basic precept it repeatedly asserts, that the court should "give effect to the intent of the parties as revealed by the language they chose to use."  (Opp. at 8); *see also Atl. Speciality Ins. Co. v. AE Outfitters Retail Co.*, No. 07 Civ. 8508 (LAP), 2014 U.S. Dist. LEXIS 66448, at *23 (S.D.N.Y. May 12, 2014) ("An interpretation of a contract that has the effect of

---

[2] This disposes of Plaintiff's efforts to add obligations into the PI Agreement that Plaintiff did not bargain for and are not there.  For instance, Plaintiff claims Defendants made an "express representation" that a sale of Seaco was imminent (Opp. at 15 n.13), but there is no such representation in the PI Agreement.  Indeed, as noted in the Motion and not challenged by Plaintiff, the PI Agreement is silent on when a Seaco Sale would take place.  (Mot. at 6)

2

rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible.").

Plaintiff also asserts that the word "transaction" has been given definitions as broad as "conducting business" and "other dealings." (Opp. at 6) Plaintiff's need to stretch the Seaco Sale definition to include *any* "dealings" is telling, and improperly renders the contract's language meaningless once again. Moreover, it is clear that the Parties had an actual "transaction" in mind (not merely any "dealing"), as the PI Agreement expressly contemplates a bidding process, an SPA, an Escrow Agreement, a closing, and sales proceeds. (*See* Mot. at 9-11)

Notably, contractual obligations that are triggered by changes of control alone are not uncommon, yet in the PI Agreement, the Parties described a *transaction* resulting in a change of control of (specifically) an interest in Seaco. (See PI Agreement § 1.1 ("Seaco Sale"))[3] Had the parties intended differently, they could and would have said so expressly. *See Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 133 A.D.3d 96, 107-08 (1st Dep't 2015) (holding that if the "very sophisticated parties" wanted a clause to apply more broadly, "they certainly could have included such language in the contracts") (internal citations omitted). The absence of any transaction, standing alone, is dispositive of Plaintiff's claim.

## B. Plaintiff's New "Details" Must Be Disregarded

Plaintiff's Opposition tries to insert into the record brand-new "background details surrounding the negotiation of the PI Agreement." (Opp. at 8) None of these "background details"

---

[3] Plaintiff cites *ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.)*, 287 B.R. 605, 608 (Bankr. S.D.N.Y. 2003), and badly misreads it. (Opp. at 6) In *Adelphia*, the bankruptcy court found ambiguity as to whether a change of control transaction falling under the relevant agreement had taken place, because the controlling Rigas family had resigned board seats and placed their stock into a voting trust, but had not actually sold the stock or finally disposed of their ability to regain control later. *Id.* at 616. There was no dispute that some actual "transaction" was required, and indeed, the Rigas family had entered into a documented transaction resigning from the board and transferring their stock. *See id.* at 615.

3

are in the Complaint, as Plaintiff concedes, and they must therefore be disregarded.[4]  *See Amron v. Yardain Inc. Pension Plan*, No. 18 Civ. 11336 (LGS), 2019 U.S. Dist. LEXIS 210096, at *26 n.5 (S.D.N.Y. Dec. 5, 2019) ("The Court may not 'consider[] materials outside the pleadings in ruling on [a] motion to dismiss'"); *Universal Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877 (PAC), 2012 U.S. Dist. LEXIS 176214, at *3 (S.D.N.Y. Dec. 12, 2012) ("[N]ew facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered in deciding a motion to dismiss.").  This is especially so since the Court gave Plaintiff the opportunity to file an Amended Complaint in response to the Motion, and Plaintiff declined to do so.  (ECF No. 18)[5]

## C. Plaintiff's Payment Is Supposed To Be Made From Sales Proceeds, And There Are No Sales Proceeds

As shown in the Motion, the PI Agreement is specifically structured to pay Plaintiff $25 million directly from the proceeds of a Seaco Sale.  (Mot. at 9-10)  Plaintiff agrees that none of the conditions laid out in Sections 2.3.1 and 2.3.2 of the PI Agreement have occurred and that there has not been a single dollar of consideration for any "Seaco Sale."  (Opp. at 9-10)  Plaintiff asks the Court to disregard these provisions by claiming they apply only "in the event that Seaco was sold through a 'traditional sale.'"  (Opp. at 10)  That is not what the PI Agreement says—the escrow provisions apply to any "Seaco Sale" without limitation.  (PI Agreement §§ 2.3, 2.3.1, 2.3.2)[6]  This

---

[4] These self-serving new "details" purport to outline Plaintiff's "concern[s]" and "intent" in approaching the PI Agreement, which even if pled would have to be disregarded, because the contract is unambiguous.  *See Ellington v EMI Music, Inc.*, 24 N.Y.3d 239, 244 (N.Y. 2014) ("Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract.").

[5] Plaintiff also includes references and online citations for four newspaper articles—one published three months after the Complaint was filed, and none attached to the Complaint or named in the pleadings—and argues that the Court may take "judicial notice" of them.  (Opp. at 12 n.8)  However, as explained by Plaintiff's own authority, a court "cannot make factual inferences based on the content of these [articles]."  *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, No. 06 Civ. 6278 (SHS), 2006 U.S. Dist. LEXIS 91959, at *2-3, 5 (S.D.N.Y. Dec. 18, 2006).

[6] Plaintiff's claim that these provisions only apply "in the event" Seaco is sold therefore improperly reads words into the contract that are not there.  *See Marathon Private Equity Fund I, LLC v. Questor Mgmt. Co., LLC*, 2008 N.Y. Misc. LEXIS 4457, at *11 (N.Y. Sup. Ct. July 22, 2008) (denying plaintiff's attempt to have the court imply a provision into a contract because "a court may not remake a contract under the guise of interpretation").

reflects the parties' intent and understanding that any "Seaco Sale" would involve the payment of some consideration in exchange for some interest in or asset of Seaco.

Furthermore, the Motion described how these provisions reflect the parties' intent that the $25 million payment to Bravia come from Seaco Sale proceeds, not Defendants' own pockets. (Mot. at 10) Plaintiff has no response.

Instead, Plaintiff relies on Section 2.3 of the PI Agreement, but only by misstating what it says. (Opp. at 10) Section 2.3 does not address what happens "in the event that there is no Seaco SPA or escrow agreement," as Plaintiff wrongly asserts." (*Id.*) Rather, Section 2.3 states that if Hong Kong Bohai were to breach the agreement and fail to comply with Sections 2.3.1 and 2.3.2, and fail to set up the escrow, it cannot use that breach to avoid paying Bravia. There is nothing in the PI Agreement, in Section 2.3 or otherwise, that imagines a "Seaco Sale" with no sales proceeds.

Finally, Plaintiff takes issue with Defendants' reliance on *Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144 (S.D.N.Y. 2007) by arguing that the plaintiff in *Crowley* was wrong in interpreting the contract's payment trigger too broadly—which is exactly what Defendants contend here. (Opp. at 10) In *Crowley*, the Court properly dismissed the Amended Complaint because the contract required payment to plaintiff only if plaintiff's efforts resulted in a transaction or series of transactions involving the sale of defendant's securities, there had been no such transaction, and the plaintiff's efforts to broaden the conditions that would lead to payment were rejected. Likewise here, Plaintiff's effort to broaden the transactions that lead to its payment beyond what is in the PI Agreement should be rejected.

**D. The Actions Of The Hainan Provincial Government At HNA Group Are Not A "Seaco Sale"**

Much of Plaintiff's Opposition is an effort to overstate the limited facts it has pled in support of the purported "change of control" at HNA Group. For example, Plaintiff claims in its

Opposition that "the Joint Working Group is really a mechanism for the Hainan provincial government to displace the prior managers and seize the reins of power" (Opp. at 6, 11 n.7), even though this is nowhere in the Complaint. But no matter how many colorful descriptions Plaintiff presents in its brief—whether "takeover," "placement of proxies," "seismic change," "seize[] control," "seize the reins of power," or "exercise complete control" (Opp. at 3, 6, 11, 12)—Plaintiff is still left with the actual facts (not labels) that it alleged in the Complaint. *Gillespie v. St. Regis Residence Club, N.Y. Inc.*, 343 F. Supp. 3d 332, 339 (S.D.N.Y. 2018) ("A complaint that offers 'labels and conclusions' or 'naked assertions' without 'further factual enhancement' will not survive a motion to dismiss.").[7] Those facts are simple: in the wake of the unprecedented COVID-19 crisis, the government provided assistance to HNA Group, and that led to the formation of the Joint Working Group and the presence of two government officials as Executive Chairman and *co*-CEO. (Compl. ¶¶ 32-35; *see* Mot. at 2-3) These facts do not plead a change of control, however many times they are re-cast and re-stated in the Opposition.

Moreover, HNA Group is separated from Seaco by five separate corporate entities, and HNA Group owns only 51.78 percent of Bohai Leasing, which is publicly traded. (Compl. ¶ 15)[8] Plaintiff does not address Defendants' argument that the PI Agreement refers to a disposal or change in control of an interest in *Seaco* or its assets, specifically, which does not include new personnel at HNA Group. Instead, Plaintiff insists that a change of control is pled because of HNA

---

[7] Despite Plaintiff's argument to the contrary (Opp. at 11 n. 6), these statements are exactly the type of conclusory assertions that merely track the language of the claim and cannot survive a motion to dismiss. *See In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 770 (S.D.N.Y. 2017) (allegation that party "had the power to influence and control and did influence and control" decision making of a company was conclusory); *Starr Int'l Co. v. FRB*, 906 F. Supp. 2d 202, 224 (S.D.N.Y. 2012) (allegations of "[a]cting (as always) at the direction and under the supervision of," "requir[ing]" action "through its control," and "using its control" were "naked assertions" that did not plead control and did not survive a motion to dismiss).

[8] HNA Group thus is not Seaco's "indirect owner," and though Plaintiff wrongly says this mischaracterization is conceded (Opp. at 3, 12), it is not, and it is incorrect.

Group's stockholdings (Opp. at 11-12), but there are no facts pled about actual control exercised over Seaco, and Plaintiff does not cite a single case finding control in such circumstances.[9]

Plaintiff also asserts that a change of control has been found on similar facts. (Opp. at 12) Yet every change of control case Plaintiff cites involved a change of control at the relevant company itself, not control of any parent company, and certainly not control of a holder of 51 percent of the stock of the relevant company's great-great-grandparent. *See UBS Sec. LLC v. Red Zone LLC*, 77 A.D.3d 575, 578 (1st Dep't 2010) (finding a "change in control" over Six Flags when defendant replaced nine out of ten board seats and several officers *at Six Flags*); *Del Glob. Techs. Corp. v. Park*, No. 03 CIV. 8867 (PGG), 2008 U.S. Dist. LEXIS 101757, at *9-14 (S.D.N.Y. Dec. 15, 2008) (finding "change of control" at Del Global upon departure of all but one of the directors *of Del Global*); *In re Adelphia Commc'ns Corp.*, 287 B.R. at 608 (considering whether a "change of control" of Adelphia occurred where officers and members of the board of directors *of Adelphia* resigned). Plaintiff has failed to show that allegations of action taken at *HNA Group* support a finding of a change in control of *Seaco*. (Mot. at 11-12)

### E. The Alleged Drop In Seaco's Net Income Is Also Not A "Seaco Sale"

As to Plaintiff's theory of a second "Seaco Sale" based on a drop in Seaco's net income,[10] Plaintiff does not dispute that it has not pled any facts regarding a sale or disposal of any assets, let alone "material" assets. (Mot. at 14-15) Plaintiff also does not dispute that there is no covenant

---

[9] Plaintiff cites *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 272 (E.D.N.Y. 2010), saying a court may consider whether a parent company interferes with the assignment of the subsidiary's key personnel in assessing control. There are no facts pled about Seaco's personnel at all, and just like in *Gallelli*, there has been no adequate showing of control. *Id.* at 273 ("Plaintiffs have shown nothing more than the fact that [parent] is, as it has asserted, a holding company whose major asset is the stock of [subsidiary].")

[10] Plaintiff argues that it is entitled to plead its change of control theory and its net income drop theory in the alternative. (Opp. at 14) These are not actually pled in the alternative in the Complaint (*see* Compl. ¶ 47), but in any event, the issue is that Plaintiff's assertion of two Seaco Sales under completely divergent facts further underscores it misinterpretation of the PI Agreement, which contemplates one Seaco Sale and one payment. Plaintiff's illustration of five separate asset sales is inapposite, as a "Seaco Sale" expressly includes a "series of transactions." (PI Agreement § 1.1 ("Seaco Sale"))

in the PI Agreement requiring payment if Seaco's net income fell below a specific amount, and agrees that assets and income are not the same thing. (Opp. at 13; *see also* Mot. at 14-15)

Rather, in its Opposition, Plaintiff scrambles and newly speculates that the alleged drop in net income *must* have been "a result of" or "precipitated by" Seaco disposing of a material portion of its assets. (Opp. at 3, 13) Plaintiff also baldly asserts in a footnote that "the evidence will show" that the drop in income "cannot be explained" by anything else. (Opp. at 13 n.11) None of this is in the Complaint, which simply says that "Seaco's net income has reduced dramatically . . . and therefore Seaco has sold, transferred, or disposed of a material portion of its assets." (Compl. ¶ 10). Again, Plaintiff's attempts to amend its pleading in its Opposition should be disregarded.

In any event, these new statements do not state a claim, because Plaintiff must plead facts giving rise to a plausible inference that Seaco actually disposed of a material portion of its assets. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.") (internal citation omitted). It does no good to assert (in an opposition brief) that the alleged drop in Seaco's income "must have been" the result of an asset sale. For one thing, if a material portion of Seaco's assets had actually been sold, Plaintiff would have pled it. Furthermore, there can be many causes of a drop in income. While Plaintiff notes that Seaco earns income from its assets (like any other company) (Opp. at 13 n.10), Plaintiff fails to plead facts plausibly suggesting that the drop in income was the result of an asset disposal, as opposed to literally anything else. Plaintiff's claim to payment based on a nonexistent asset sale should be dismissed.

AMERICAS 103069962

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF THE SEACO GUARANTEE

The Parties agree that payment under the Seaco Guarantee is only due if there is a payment obligation under the PI Agreement. (Mot. at 15; *see also* Opp. at 14-15) Plaintiff's Seaco Guarantee claim should be dismissed for the same reasons as its claim under the PI Agreement.

## III. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF TO RECEIVE BI-WEEKLY UPDATE REPORTS

### A. Plaintiff Does Not Have Standing To Sue On This Obligation

Standing requires a concrete "injury in fact" to a plaintiff's own legal rights and interests. (Mot. at 16) Plaintiff does not dispute this fundamental fact, or that the text of the PI Agreement makes this obligation owed solely to Bravia Capital Hong Kong Limited, a party Plaintiff chose not to include in this action. (*See* Opp. at 16-17)[11] Instead, Plaintiff points out that notices under the PI Agreement are to be sent to Bravia's lawyers. (Opp. at 16) This misses the point. Sharing attorneys to receive notices does not give Plaintiff the right to sue on an obligation owed to someone else. Plaintiff has not alleged that the parties are alter egos and, as noted in the Motion and not disputed by Plaintiff, it is black-letter law that one corporate entity cannot assert its affiliate's legal rights. (Mot. at 17)

### B. Plaintiff Has Not Adequately Pled The Elements Of Injunctive Relief

Plaintiff does not, and cannot, dispute that there has been no "bidding or closing process" that would have necessitated updates from Hong Kong Bohai. (Mot. at 17; Opp. at 17) As a result, Plaintiff has not pled the condition precedent for this obligation. Plaintiff asserts that updates should have been provided anyway (Opp. at 16-18), but it is not clear what updates there could

---

[11] Plaintiff is incorrect that the maxim of *inclusio unius est exclusio alterius* is improperly applied here, as the obligation Plaintiff suing under is owed only to "Bravia" under the PI Agreement—the Hong Kong entity—while other obligations are owed to "Bravia and/or the Bravia Parties." (Mot. at 17) That is precisely what the maxim addresses. *See 260-261 Madison Ave., LLC v Bower Monte & Greene, P.C.*, 137 A.D.3d 457, 458 (1st Dep't 2016) ("[I]f parties to a contract omit terms . . . the inescapable conclusion is that the parties intended the omission.").

9

have been on a process that did not exist.  Moreover, without any bidding and closing process to update on, Plaintiff cannot show that it has been harmed, let alone irreparably harmed, by any failure to provide update reports.  Tellingly, Plaintiff does not even try to address Defendants' argument that Plaintiff has not pled the necessary elements of injunctive relief.  (*See* Opp. at 18)

Plaintiff attempts to downplay its request for injunctive relief by stating that it "merely seeks an order compelling the HNA Parties to honor their contractual commitment." (Opp. at 18)  That is exactly what a mandatory injunction is.  (Mot. at 18; *see also Stallworth v. Joshi*, No. 17-cv-7119 (RJS), 2017 U.S. Dist. LEXIS 219931, at *9 (S.D.N.Y. Nov. 22, 2017) (describing a mandatory injunction that "command[s] some positive act").)  Plaintiff cannot re-characterize its requested relief to give itself a lower burden, and its failure to allege any of the elements of injunctive relief should be dispositive.  (Mot. at 18-19)

## CONCLUSION

For the reasons set forth above and those in the Opening Brief, Defendants respectfully request that the Complaint be dismissed in its entirety with prejudice.

Respectfully submitted,

Date: June 26, 2020

WHITE & CASE LLP

*/s/ Kimberly A. Havlin*
Kimberly A. Havlin
Iris B. Greenquist
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
kim.havlin@whitecase.com

*Attorneys for Defendants Hong Kong Bohai Leasing Asset Mgmt. Corp., Ltd., Bohai Leasing Co. Ltd., and Seaco SRL*

10